Maurice Atlas v. Commissioner.
Atlas v. Commissioner
Docket No. 24656.
United States Tax Court
1951 Tax Ct. Memo LEXIS 268; 10 T.C.M. (CCH) 333; T.C.M. (RIA) 51095; April 5, 1951
*268 Frank C. Olive, Esq., 509 Chamber of Commerce Bldg., Indianapolis, Ind., for the petitioner. John O. Durkan, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency [2] in petitioner's income tax for 1944. Petitioner claims an overpayment of $976.72 in income tax for that year. *269 The only question is whether for tax purposes petitioner and his wife were engaged in a business as partners in that year, so that income from the business in 1944 was taxable to both of them rather than to petitioner alone. Findings of Fact Petitioner is an individual residing at Indianapolis, Indiana. He filed his income tax return for the calendar year 1944 with the collector of internal revenue for the district of Indiana. Petitioner and his wife Rose were married in 1922. They lived in Chicago, Illinois. Petitioner and his wife, ever since their marriage, treated their resources, assets and property as jointly owned; they always considered their wealth to be shared equally as husband and wife; and questions involving economic or business matters were the subject of mutual concern and consultation between them as husband and wife. In 1925 petitioner borrowed $300 from his brother, and Rose's mother loaned them $750. With the proceeds of these loans, petitioner and his wife in April 1925 bought a retail dry-goods store in Chicago, selling children's, infants', and ladies' ready-to-wear clothes. The store was operated by Rose. Petitioner worked at that time as a clothing *270 cutter, earning from $50 to $55 weekly, and during periods of slack employment he helped with the chores at the store, such as cleaning. Available records show that this business earned a net profit of $715.96 in 1925 and $3,718.10 for 1926. However, neither petitioner nor his wife filed income tax returns for any of the years 1925 through 1928. The store was sold in or about 1929 for about $3,000. By the time the store was sold petitioner and his wife had furnished a four-room apartment, had bought a car, and had accumulated at least $10,000 in funds. Petitioner then bought stock in a clothing corporation, called Grove Outfitting Co., paying therefor about $10,000 in cash, and petitioner was employed by the corporation as a salesman. He continued in this employment until 1940, when he sold that stock to the corporation for $8,619.03. Petitioner filed income tax returns for these years. During these years Rose was unemployed. It was during this period, too, in 1933, that their only child was born. In 1940 petitioner and Rose visited his nephew, Isadore Frank, in Indianapolis, Indiana. Frank was operating a small canvas-covered grocery and fruit stand in Indianapolis, and he proposed *271 that petitioner go into business with him. On October 18, 1940, petitioner and Frank executed a partnership agreement, in which each agreed to contribute "equal sums of money for the purpose of purchasing real estate and erecting a Super Market". The agreement gave each a one-half interest in the partnership, and it was agreed that "said partners shall be in direct charge of the operation of said business * * * and that the surplus shall be divided equally between the said Isadore N. Frank and the said Maurice Atlas". A paper separately executed at the same time stated that petitioner had not yet contributed an amount equal to Frank's contribution. On the same date, October 18, 1940, Frank and his wife deeded to petitioner's attorney the real property on which Frank's business was then situated, and the attorney immediately reconveyed the property to Frank and petitioner. Construction of the contemplated "super market" required additional land, and for this purpose an adjoining lot was thereafter purchased. Subsequently, on January 17, 1941, both these lots were conveyed to petitioner's attorney, and by him reconveyed to petitioner, Frank, and their wives. On January 14, 1941, petitioner, *272 Frank, and their wives executed a secured note for $15,000 borrowed from the Merchants National Bank of Indianapolis. This money was used in the construction of the "super market", which was completed in 1941. In September 1941, petitioner, his wife Rose, and two other signing parties, George Cohen and Jack Platt, executed a note for $5,000, and the sum so borrowed was invested in the business. After several months of operation, Frank decided to withdraw from the business. Frank refused to sell his interest in the business to petitioner after there had been some disagreement between them as to price. He did sell it, however, to petitioner's brother, Harry Adler, on September 5, 1941, for $16,000. Adler apparently bought this one-half interest in order to transfer it later to petitioner. The bill of sale, signed by Frank and his wife, and Adler, recited immediate payment of $500 in cash; required payment of $9,500 on September 15, 1941; and required execution of a promissory note for $6,000, payable at the rate of $200 monthly but to be completely paid on or before two years from its date of issuance. This note, when executed, was signed by petitioner, his wife Rose, and Adler. On *273 September 5, 1941, the date of the sale to Adler of the Frank interest in the business, Adler and petitioner agreed "not to sell their said partnership business while there shall be outstanding any unpaid sums upon the $6,000.00 promissory note to Isadore N. Frank, unless they shall first fully pay to the said Isadore N. Frank any and all moneys unpaid upon said note". At some time thereafter the name of the business was changed from Frank's Super Market to Atlas Super Market. Adler continued as a partner until October 1943, when he transferred his one-half interest in the business to petitioner. On June 1, 1944, on the advice of his lawyer and accountant, petitioner transferred to his wife Rose an undivided one-half interest in Atlas Super Market "in consideration of the sum of one dollar and other valuable considerations". The transfer was influenced by a motive to reduce taxes. The document executed by petitioner to achieve this transfer recited that petitioner "since 1942, owned, operated, conducted and managed a grocery business under the firm name and style of Atlas Super Market"; that "the development, growth, expansion and sucess [success] of said enterprise has been *274 due in part to the untiring efforts of Rose Atlas, through the contribution of her personal services, labor and efforts"; and that "because of said services and other valuable contributions, it is my intention that Rose Atlas, own, possess and have an undivided one-half interest in said grocery business, as of the date of my signing this instrument". The document stated that petitioner bargained, sold, assigned and transferred, "over unto Rose Atlas, (my Wife); and [sic] undivided one-half interest in my business known as Atlas Super Market". The document provided that petitioner agreed "to hold and save said Rose Atlas harmless with respect to any liabilities of the business existing or contingent as of June 1, 1944". It stated that, simultaneously therewith, petitioner would enter into a partnership agreement with Rose. Such an agreement was made on the same day and was signed by petitioner and Rose. It provided that the "Management and Control of the partnership business shall be vested in both partners jointly"; that partnership funds were to be deposited and to be "subject to check or withdrawal by either partner", and "Each partner shall be entitled to bind and obligate the *275 partnership with respect to borrowing funds for and on behalf of the partnership"; that the parties would devote their services exclusively to the partnership; that "inasmuch as their present capital interests are identical, that profits and/or losses should be borne equally", and each was to receive a salary of $75 per week; and that the partnership was to continue for a period of ten years, unless sooner terminated by the death or withdrawal of either party. Petitioner filed a Federal gift tax return for 1944 reporting as a gift the undivided one-half interest in the business transferred to Rose. Rose filed an information return for 1944 reporting receipt of the interest as a gift. Until May 31, 1944, the books of the business contained a capital account for petitioner, but none for Rose. Thereafter a capital account was opened for Rose as well. After the new store was built in 1941, Frank, petitioner, and their respective wives all worked in the business. The store was open from 7:00 A.M. to 11:00 P.M., and the men and their wives worked on a shift basis. Rose became very familiar with the operation of the business. On various occasions during the period from 1941 through *276 1944, she supervised the cashiers and checked the cash registers and cash receipts; placed orders for goods, and checked deliveries to the super market; supervised employees and participated in decisions concerning their hiring and firing; drew on business funds to pay bills and to meet obligations, both of a business and personal nature. During the war, petitioner often left town to buy merchandise, and during these periods Rose managed the store. The business bank account was kept in the joint names of petitioner and Rose, just as their bank account had been when they lived in Chicago, and either could withdraw funds. Real estate acquired with such funds was placed in the names of both petitioner and Rose. Petitioner filed a Federal income tax return for the calendar year 1944. He reported only the income from Atlas Super Market for the period from January 1, 1944, through May 31, 1944, which amounted to $8,837.66. Petitioner reported no income from Atlas Super Market after May 31, 1944. For the period from June 1, 1944, through May 31, 1945, petitioner and Rose filed a partnership return under the name of Atlas Super Market, covering the fiscal year of the business ending on May 31, 1945. Rose *277 did not return, for tax purposes, any income from Atlas Super Market until 1945. Petitioner had no income in 1944 other than that derived from Atlas Super Market. The deficiency determined by respondent was based on a refusal to recognize that any income from Atlas Super Market in 1944 was attributable to Rose, and on the conclusion that petitioner should have reported in his 1944 return the income earned by Atlas Super Market for the entire calendar year 1944. Petitioner and his wife intended in good faith and with a business purpose to engage as partners in the conduct of the business of Atlas Super Market from June 1, 1944, through December 31, 1944. They were not in fact partners in Atlas Super Market prior to June 1, 1944. Opinion RAUM, Judge: The deficiency determined by the Commissioner is based upon the theory that the partnership agreement executed by petitioner and his wife on June 1, 1944, was ineffective for tax purposes and that the entire income from Atlas Super Market for the remainder of the calendar year 1944 must be attributed to petitioner. Petitioner, on the other hand, relying upon the alleged partnership, contends that none of the post-May 31, 1944 income *278 from Atlas Super Market is taxable to him for the calendar year 1944 since the partnership must be recognized and, being on a fiscal year ending May 31, none of its earnings after May 31, 1944, may be ascribed to him in 1944. He also seeks a refund for the year 1944 on the theory that he and his wife were actually partners during the entire year 1944, even prior to the execution of the agreement of June 1, 1944, and that he erroneously reported all, instead of one-half of the income of the business for the first five months of 1944. We hold that petitioner and his wife executed a valid partnership agreement on June 1, 1944, and that they really and truly intended to join together, in accordance with the terms of the agreement, to conduct the business of Atlas Super Market as partners. Although the agreement was motivated by tax purposes, it reflected a genuine business relationship in which both parties actively contributed significant efforts to the enterprise. This was not the case of an artificial attempt to deflect the husband's income to his wife such as was present in , and . *279 True, Mrs. Atlas' capital contribution to the business was based upon a purported gift by her husband of a one-half interest therein. But petitioner's prior formal ownership of the business was in turn based upon family resources which were attributable to the joint efforts of both spouses. We think that the facts in this case call for the recognition of the partnership agreement for tax purposes. Cf. ; . However, we reject petitioner's contention that a partnership existed prior to June 1, 1944. Although the conditions were such that a valid partnership could have been formed, we are convinced upon this record that none in fact did exist prior to June 1, 1944, for tax purposes or for any other purpose. Decision will be entered that there is no deficiency and no overpayment in tax. Footnotes
2. The letter of deficiency mailed by respondent to petitioner asserts the deficiency to be $6,923.28, and the deficiency is listed in this amount in the statement attached to the letter of deficiency. But the computations in this statement, supposedly explaining the adjustments and the manner in which they gave rise to the deficiency, end with a deficiency of $7,088.39. While no explanation is given in that statement for the discrepancy between these two figures, amounting to $165.11, this difference seems to be accounted for by the stamped legend on petitioner's income tax return that a refund in that amount was made as a preaudit adjustment. Respondent's brief asserts the deficiency to be in the amount of $7,088.39, and petitioner has raised no objection in this connection and seems to have agreed in his brief. There petitioner states that "the amount of the alleged deficiency is $7,068.39", apparently intending to refer to the amount of $7,088.39. However, it is not necessary to decide the point in view of our conclusion that there is no deficiency in any amount for the year involved.↩